**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| CHEM-DRY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHERYL PITTIGLIO,<br>PITTIGLIO ENTERPRISES, LLC, and<br>C & D MANAGEMENT LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _______________ |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Chem-Dry, Inc. f/k/a Harris Research, Inc. ("Chem-Dry"), by and through its attorneys, complains of Defendants, Cheryl Pittiglio ("Pittiglio"), Pittiglio Enterprises, LLC f/k/a Short Stop Chem-Dry ("PE LLC"), and C & D Management LLC d/b/a Pure Carpet Cleaning ("Pure Carpet" and collectively with Pittiglio and PE LLC, "Defendants"), as follows:

**PARTIES**

1. Plaintiff, Chem-Dry, is a Utah corporation with its principal place of business at 5405 Data Court, Ann Arbor, Michigan 48108. It is engaged in the business of franchising independent parties to operate Chem-Dry businesses throughout the United States. Chem-Dry franchisees are licensed to use the Chem-Dry trade names, service marks, trademarks, and trade dress, and to operate under the Chem-Dry system of operation, which involves performing carpet, upholstery,

drapery, and rug cleaning, tile and stone care, spot removal and protective services, as well as other services utilizing specialized equipment, products, accessories, identification schemes, vehicles, management programs, standards, specifications, proprietary marks, and identification. Chem-Dry is the franchisor under the Chem-Dry franchise agreements, including the franchise agreements between Chem-Dry and PE LLC (the "Franchise Agreements"). Franchise Agreement 232110 is attached hereto as **Exhibit 1** and Franchise Agreement 432086 is attached as **Exhibit 2**.

2. On information and belief, Cheryl Pittiglio is an individual residing in Clinton Township, Michigan.

3. Pittiglio Enterprises LLC f/k/a Short Stop Chem-Dry is a Michigan limited liability company with its principal place of business at 24378 Crocker Boulevard, Clinton Township, Michigan 48036. Pittiglio Enterprises LLC can be served by its registered agent, Cheryl Pittiglio, at 38552 Albert Boulevard, Clinton Township, Michigan 48036.

4. C & D Management LLC d/b/a Pure Carpet Cleaning is a Michigan limited liability company with its principal place of business at 24378 Crocker Boulevard, Clinton Township, Michigan 48036. C & D Management LLC can be served by its registered agent, Dalton Goins, at 44594 Bayview Avenue, Apt. 12309, Clinton Township, MI 48038.

## JURISDICTION AND VENUE

5. Pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, this court has federal question subject matter jurisdiction over Chem-Dry's federal claims arising under 15 U.S.C. § 1051 *et seq.* (the "Lanham Act").

6. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Pittiglio because she is domiciled in Michigan. This Court also has personal jurisdiction over PE LLC and Pure Carpet because they are limited liability companies formed under the laws of Michigan and their principal places of business are in Michigan.

8. Pursuant to 28 U.S.C. § 1391, venue is proper in this district and division.

## FACTS

### The Chem-Dry Franchise System

9. Chem-Dry is the franchisor of the Chem-Dry franchise system ("System"). A Chem-Dry franchised business offers carpet, upholstery, drapery, and area rug cleaning as well as tile, marble, and stone care, spot removal and protective services and other services which may be specified from time to time, under the "Chem-Dry" name and trademarks. A Chem-Dry business utilizes Chem-Dry branded vehicles, cleaning equipment, cleaning solutions and products, invoices,

techniques and even clothes to ensure a consistent customer experience across the System. As part of the System, franchisees purchase Chem-Dry-specific equipment and supply packages tailored to each type of surface cleaning. Franchisees are required to purchase Chem-Dry branded vehicle decals. The branding, technology, and cleaning products embody intellectual property assets owned by Chem-Dry and deliver and convey Chem-Dry's high standard of cleaning services and goods.

10. Chem-Dry has been operating as a franchisor since 1978.

11. There are currently almost 1,000 Chem-Dry franchised businesses across the United States. In the years since the Chem-Dry System began, thousands of customers have been served by Chem-Dry.

12. Chem-Dry owns multiple federally registered trademarks including (collectively, the "Chem-Dry Marks"):

a) On June 12, 1979, federal Registration No. 1,119,887 issued for the trademark "CHEM-DRY", in standard characters (the "CHEM-DRY Word Mark") in International Class ("IC") 3 for "CHEMICAL CARPET CLEANING COMPOSITIONS" and IC 7 for "PRESSURIZED SPRAY TANKS FOR SPRAYING CLEANING CHEMICALS ON CARPETS, CARPET SCRUBBING MACHINES AND VACUUMS FOR REMOVING CLEANING COMPOSITIONS FROM

CARPETS." This registration has a filing date of March 13, 1978, has a first use in commerce date of November 19, 1977, and is in full force and effect. The USPTO acknowledged the affidavit of incontestability for the CHEM-DRY Word Mark. A true and accurate copy of the registration certificate for the CHEM-DRY Word Mark is attached as **Exhibit 3**.

b) On August 27, 1985, federal Registration No. 1,357,192 issued for the trademark "CHEM-DRY", in standard characters (the "CHEM-DRY IC 37 Word Mark") in IC 37 for "CARPET CLEANING SERVICES." This registration has a filing date of December 17, 1984, has a first use in commerce date of November 19, 1977, and is in full force and effect. The USPTO acknowledged the affidavit of incontestability for the CHEM-DRY IC 37 Word Mark. A true and accurate copy of the registration certificate for the CHEM-DRY IC 37 Word Mark is attached as **Exhibit 4**.

c) On October 7, 2003, federal Registration No. 2,770,836 issued for the mark ChemDry with color claimed (the "CHEM-DRY Color Design Mark") in IC 3 for "CARPET

CLEANING PREPARATIONS," in IC 5 for "CARPET DEODORIZING PREPARATIONS," and IC 37 for "CARPET CLEANING, UPHOLSTERY CLEANING AND DRAPERY CLEANING; CARPET CLEANING FEATURING FRAGRANCE, UPHOLSTERY CLEANING FEATURING FRAGRANCE, AND DRAPERY CLEANING FEATURING FRAGRANCE." This registration has a filing date of December 10, 2001, a first use in commerce date of December 1997, and is in full force and effect. The USPTO acknowledged the affidavit of incontestability for the CHEM-DRY Color Design Mark. A true and accurate copy of the registration certificate for the CHEM-DRY Color Design Mark is attached as **Exhibit 5**.

d) On December 16, 2003, federal Registration No. 2,793,715 issued for the mark ChemDry with no color claimed (the "CHEM-DRY Design Mark") in IC 3 for "CARPET CLEANING PREPARATIONS," in IC 5 for "CARPET DEODORIZING PREPARATIONS," and IC 37 for "CARPET CLEANING, UPHOLSTERY CLEANING AND DRAPERY CLEANING; CARPET CLEANING FEATURING

FRAGRANCE, UPHOLSTERY CLEANING FEATURING FRAGRANCE, AND DRAPERY CLEANING FEATURING FRAGRANCE." This registration has a filing date of December 10, 2001, a first use in commerce date of December 1997, and is in full force and effect. The USPTO acknowledged the affidavit of incontestability for the CHEM-DRY Design Mark. A true and accurate copy of the registration certificate for the CHEM-DRY Design Mark is attached as **<u>Exhibit 6</u>**.

e) On April 27, 2010, federal Registration No. 3,780,184 issued for the mark with no color claimed (the "CHEM-DRY Oval Design Mark") in IC 3 for "CARPET CLEANING PREPARATIONS" and IC 37 for "CARPET CLEANING, UPHOLSTERY CLEANING AND DRAPERY CLEANING; CARPET CLEANING FEATURING FRAGRANCE, UPHOLSTERY CLEANING FEATURING FRAGRANCE, AND DRAPERY CLEANING FEATURING FRAGRANCE." This registration has a filing date of March 25, 2009, a first use in commerce date of April 21, 2005 (IC 3) and March 25, 2009 (IC 37), and is in full force and effect. The USPTO

acknowledged the affidavit of incontestability for the CHEM-DRY Oval Design Mark. A true and accurate copy of the registration certificate for the CHEM-DRY Oval Design Mark is attached as **<u>Exhibit 7</u>**.

f) On July 17, 2018, federal Registration No. 5,519,289 issued for the mark with no color claimed (the "CHEM-DRY DRIER CLEANER HEALTHIER Design Mark") in IC 37 for "Carpet cleaning, upholstery cleaning and drapery cleaning; Carpet cleaning featuring fragrance, upholstery cleaning featuring fragrance, and drapery cleaning featuring fragrance." This registration has a filing date of December 15, 2017, a first use in commerce date of July 1, 2006, and is in full force and effect. On December 17, 2024, Chem-Dry filed an affidavit of incontestability for the CHEM-DRY DRIER CLEANER HEALTHIER Design Mark. A true and accurate copy of the registration certificate for the CHEM-DRY DRIER CLEANER HEALTHIER Design Mark is attached as **<u>Exhibit 8</u>**.

g) On March 31, 2020, federal Registration No. 6,024,281 issued for the trademark "CHEM-DRY", in standard characters (the

"CHEM-DRY IC 35 Word Mark") in IC 35 for "Franchise services, namely, offering business management assistance in the establishment and operation of upholstery and carpet cleaning; Franchising, namely, consultation and assistance in business management, organization and promotion; Franchising, namely, offering business management assistance in the establishment and/or operation of upholstery and carpet cleaning; Administration of the business affairs of franchises; Assistance in franchised commercial business management; Business management advisory services relating to franchising." This registration has a filing date of October 13, 2019, has a first use in commerce date of June 12, 1979, and is in full force and effect. A true and accurate copy of the registration certificate for the CHEM-DRY IC 35 Word Mark is attached as **Exhibit 9**.

h) On January 4, 1994, federal Registration No. 1,815,327 issued for the trademark "P.U.R.T.", in standard characters (the "PURT Mark") in IC 5 for "powder or spray deodorizer for removing pet urine from carpets and other fibers." This registration has a filing date of October 28, 1991, has a first use in commerce date of January 16, 1992, and is in full force and effect. The USPTO

acknowledged the affidavit of incontestability for the PURT Mark. A true and accurate copy of the registration certificate for the PURT Mark is attached as **Exhibit 10**.

13. The Chem-Dry Marks are inherently distinctive.

14. Through extensive and continuous use of these marks in commerce and substantial investment in advertising, marketing, and promotion, the Chem-Dry Marks have come to be identified exclusively with Chem-Dry and its licensees.

15. Chem-Dry owns valid and protectable common law trademark rights in the Chem-Dry Marks.

16. Since the earlier of the filing date or at least the first use in commerce dates listed on the respective registration certificates, Chem-Dry has continuously used the Chem-Dry Marks to promote, identify, and distinguish its services.

17. Through Chem-Dry's longstanding and continuous use and substantial investment in marketing and promotion, the public has come to associate the Chem-Dry Marks with Chem-Dry and the services and goods Chem-Dry provides.

18. Chem-Dry has invested substantial time and money in marketing and promoting the Chem-Dry Marks.

19. Chem-Dry has acquired substantial goodwill in the Chem-Dry Marks. As a result, the Chem-Dry Marks have become invaluable and irreplaceable assets of Chem-Dry.

20. Through extensive and consistent advertising, promotion, and publicity, Chem-Dry has obtained and holds unique and distinctive trade dress. Specifically, Chem-Dry's website and vehicles utilize a distinct green and blue color palette (the "Chem-Dry Trade Dress"). Examples of the Chem-Dry Trade Dress, including uses by franchisees, are shown below:




https://www.chemdry.com/




https://www.chemdry.com/locations/chapelhillnc

21. The Chem-Dry Trade Dress is inherently distinctive or has acquired distinctiveness through secondary meaning as Chem-Dry has extensively and consistently used, via its franchisees, the distinctive Chem-Dry Trade Dress for more than five years to identify its cleaning services.

22. The Chem-Dry Trade Dress does not serve a functional purpose: It is an ornamental color scheme and has no function.

23. As a result of the extensive sales, advertising and promotion of items identified by the Chem-Dry Trade Dress, the public has come to know and recognize the Chem-Dry Trade Dress, and to associate it exclusively with products and services offered by Chem-Dry and Chem-Dry franchisees. The Chem-Dry Trade Dress is widely known and is an asset of inestimable value to Chem-Dry, representing and embodying Chem-Dry's considerable goodwill and favorable reputation.

24. As an additional part of its business, Chem-Dry has developed valuable trade secret information in the form of Chem-Dry's proprietary cleaning products, procedures, software, and customer lists.

25. Chem-Dry has designed and developed a method for establishing, operating, and performing carpet and upholstery/drapery cleaning, including area rug cleaning, spot removal, protectant services, wood floor cleaning, and tile and stone care services to residential and commercial customers, using Chem-Dry's specifications, standards, operating procedures, supplies, and specialized equipment. Chem-Dry develops and manufactures the cleaning solutions sold to and used by Chem-Dry franchisees.

26. Chem-Dry has taken reasonable steps to keep its information confidential, including by requiring franchisees to agree that Chem-Dry's confidential information, including its trade secrets, cannot be used outside of the System. *See* Exs. 1 & 2 ¶¶ 5, 6, 16.c.

27. Information such as Chem-Dry's proprietary products, procedures, software, and customer lists are independently valuable to others in the industry and are not publicly known. If a competitor has access to such information, it would be possible to more easily acquire customers by undercutting Chem-Dry pricing. Moreover, even knowing the contact information of the individuals tasked by

customers with contracting for cleaning services can assist in client acquisition by eliminating the need for cold calling phone numbers.

28. Chem-Dry has expended substantial resources over the years to create and to protect the highly confidential information necessary to build and maintain a significant business and to compete effectively against others in the industry.

**Defendants' Chem-Dry Franchise Agreements**

29. PE LLC entered into the Franchise Agreements with Chem-Dry on or about August 9, 2023.[1]

30. Pursuant to the Franchise Agreements, PE LLC was granted the right to operate Chem-Dry franchises in the following areas:

- Macomb County, Michigan (No. 432086) (*see* Ex. 2); and
- The Melvindale Area, River Rouge Area, Ecorse Area, Lincoln Park Area, Grosse Pointe Park Area, Grosse Pointe Area, Grosse Woods Area, Grosse Farms Area, Hamtramck Area, Highland Park Area, and Detroit Area, Michigan (No. 232110) (*see* Ex. 1).

31. The Franchise Agreements provide that PE LLC was to pay a monthly franchise fee. *See* Exs. 1 & 2, ¶ 8.b.

32. PE LLC agreed that, upon expiration or termination of the Franchise Agreements, for a period of two (2) years, neither PE LLC or its owners would participate in or have any direct or indirect interest as a disclosed or beneficial owner,

[1] The Franchise Agreements were renewals and had their duration shortened to 18 months via an addendum entered into between PE LLC and Chem-Dry on August 15, 2023.

investor, lender, partner, director, officer, manager, consultant, employee, representative, or agent, or in any other capacity, in any Competitive Business located within:

> (A) the Franchised Area (as defined in the Franchise Agreements);
> (B) a ten (10) mile radius of the Franchised Area; or
> (C) the Franchise Area of any Chem-Dry Business.

Exs. 1 & 2, ¶ 16.d.

33. The term "Competitive Business" was defined in the Franchise Agreements as "any business which provides, sells or grants franchises or licenses to others to provide or sell, carpet or upholstery/drapery cleaning services or products, tile and stone care services or products, spot removal or protective services or products, Approved Services, or any related or ancillary services or products." Exs. 1 & 2, ¶ 6.c.

34. The Franchise Agreements provide that if any person restricted by the non-compete refuses to voluntarily comply with the obligations, "the obligations under this Section 16.D for that person will extend for two (2) years from the date of the entry of a court order enforcing this provision." Exs. 1 & 2, ¶ 16.d.

35. PE LLC agreed that immediately upon expiration or termination of the Franchise Agreements, PE LLC would not identify itself or any business as a current or former Chem-Dry business, use any Mark, any colorable imitation of a Mark, or other indicia of a Chem-Dry business in any manner or for any purpose. *See* Exs. 1

& 2, ¶ 16.b. Marks are defined as "trade names, trademarks, trade dress, service marks and other commercial symbols." *See* Exs. 1 & 2, ¶ 1.a.i.

36. PE LLC agreed to "not resell any type of cleaning solutions without the express written approval of CDI." *See* Exs. 1 & 2, ¶ 9.b.

37. PE LLC agreed that the equipment "shall not be used for any purpose other than the operation of the BUSINESS in compliance with this Agreement and in the manner in which it was intended and according to operating procedures as outlined in the Manual." *See* Exs. 1 & 2, ¶ 9.b.

38. In executing the Franchise Agreements and agreeing to be bound thereby, PE LLC also acknowledged that the methods, techniques, formats, specifications, procedures, information, systems, sales and marketing techniques, list of PE LLC's current customers, former customers, and those who have inquired about the services provided by the Business, and knowledge of and experience in the development, operation and franchising of Chem-Dry Businesses all constituted Confidential Information that belongs to Chem-Dry. While PE LLC was authorized to use the Confidential Information in connection with its licensed franchises, Defendants were not authorized to use such information for any other purpose. *See* Exs. 1 & 2, ¶¶ 5 and 6.

39. PE LLC agreed that the list of its current customers, former customers and those who had inquired about the services provided by PE LLC (the "Customer

List") was Confidential Information, was the property of Chem-Dry and constituted a trade secret of Chem-Dry. PE LLC further agreed that it did not own the Customer List and that it would not disclose the Customer List, or any portion thereof, to any person or entity other than Chem-Dry or its designee, either during the term of the Franchise Agreements or thereafter. PE LLC agreed to only use the Customer List in the operation of its Chem-Dry business and in accordance with the Franchise Agreements. *See* Exs. 1 & 2, ¶ 5.

40. In exchange for PE LLC's agreement to the terms of the Franchise Agreements, Chem-Dry provided PE LLC with instructions and support in connection with utilizing Chem-Dry's proprietary cleaning system, Chem-Dry's trademarks and trade dress, customer lists, and an exclusive right to operate in the assigned territory.

41. Following the expiration or termination of the Franchise Agreements, Defendants were not authorized to use Confidential Information, as defined by the Franchise Agreements, or to use the Marks. *See* Exs. 1 & 2, ¶¶ 16.b, 16.c. The termination or expiration of the Franchise Agreements also triggered PE LLC's and Pittiglio's post-termination duties and obligations. *See* Exs. 1 & 2, ¶ 16.

42. PE LLC agreed, upon termination or expiration, to provide Chem-Dry with the Customer List including the customer's first and last name, address with city, state, and postal code, the telephone number with area code, email address and

last date of service and other information required by Chem-Dry. *See* Exs. 1 & 2, ¶ 16.c.

43. PE LLC further agreed that the Customer List and contracts were derived from and were the result of the operation of the Chem-Dry franchised businesses, would not be used in connection with any business other than the licensed franchises and could not be used by, or sold or otherwise transferred to, a third party except as otherwise specifically provided in the Franchise Agreements. *See* Exs. 1 & 2, ¶ 16.c.

44. PE LLC agreed that within thirty (30) days after the Franchise Agreements terminated or expired, PE LLC would provide Chem-Dry with written evidence that PE LLC had complied with the obligations set forth in the Franchise Agreements. *See* Exs. 1 & 2, ¶ 16.

45. Chem-Dry and PE LLC agreed that each had the right, in a proper case, to obtain temporary restraining orders and/or preliminary injunctive relief from a court of competent jurisdiction. PE LLC also agreed that Chem-Dry may pursue injunctive relief without bond but upon due notice. *See* Exs. 1 & 2, ¶ 17.c.

46. Chem-Dry and PE LLC further agreed the prevailing party in any arbitration or litigation shall be entitled to recover from the other party all damages, costs, and expenses, including court costs and reasonable attorney's fees. *See* Exs. 1 & 2, ¶ 17.e.

47. The Parties agreed that controversies, disputes or claims related to or based on improper use of the Marks or Confidential Information are outside the Franchise Agreements' arbitration provision. *See* Exs. 1 & 2, ¶ 17.f.

48. The Parties agreed that either party may file and pursue civil litigation in court to collect any liquidated amount due and unpaid under this Agreement. *See* Exs. 1 & 2, ¶ 17.g.

49. The Parties agreed that Tennessee Law applies to their disputes. *See* Exs. 1 & 2, ¶ 17.h.

**Defendants Have Failed to Comply with Post-Termination Obligations and Are Infringing Chem-Dry's Intellectual Property**

50. On or about June 12, 2024, PE LLC elected not to renew the Franchise Agreements.

51. On or about March 26, 2025, Chem-Dry sent a notice of expiration confirming that the Franchise Agreements had expired. A true and correct copy of the March 26, 2025 Notice of Expiration is attached hereto as **Exhibit 11**.

52. The March 26, 2025 Notice of Expiration reminded Defendant:

a) To immediately cease to use the Chem-Dry Marks in any way and to cease to identify as a Chem-Dry franchisee;

b) To return to Chem-Dry all copies of the Customer List, hard copy and electronic copy;

c) To close all social media and marketing accounts, including Google and Facebook, as well as providing Chem-Dry with all login credentials; and

d) To furnish to Chem-Dry notification that PE LLC complied with these terms. *See* Ex. 11.

53. Chem-Dry believed that Pittiglio was violating her post-termination obligation not to operate a Competitive Business, and on or about June 13, 2025, counsel for Chem-Dry sent a letter to Pittiglio demanding that she stop violating the non-compete provisions of the Franchise Agreements. A true and correct copy of the June 13, 2025 letter is attached hereto as **Exhibit 12**.

54. On or about June 23, 2025, Pittiglio sent an email stating that she is not operating a carpet cleaning business and is not financially tied to any carpet cleaning business. Pittiglio further claimed that she is retired and has no intention of re-entering the carpet cleaning industry. A true and correct copy of the June 23, 2025 email is attached hereto as **Exhibit 13**.

55. Following further back and forth, on or about July 30, 2025, counsel for Pittiglio sent a letter reaffirming that Pittiglio ceased operating an upholstery and carpet cleaning business and that Pittiglio is not the owner, operator, employee, or sub-contractor of a carpet cleaning business. The July 30, 2025 letter affirmatively stated that Pittiglio has no interest or affiliation with Pure Carpet.

56. In a November 20, 2025 email, Pittiglio's counsel reaffirmed that Pittiglio is not competing and is not involved in Pure Carpet.

57. Around the time of this email, counsel for Chem-Dry confirmed that the website for Pure Carpet was no longer active.

58. Based on Pittiglio's representations and Pure Carpet's website being removed, Chem-Dry reasonably believed that Pittiglio was not competing, pursuant to the terms of the Franchise Agreements.

59. On or about January 6, 2026, Chem-Dry notified Pittiglio's counsel that it had learned that another business operated by Pittiglio, CCD PM LLC f/k/a Pure Air Macomb n/k/a Pure Air Michigan Mold & Pathogen Removal ("Pure Air"), appeared to be a Competitive Business within the meaning of the Franchise Agreements. Specifically, Chem-Dry learned of online consumer reviews that suggested that Pure Air was offering carpet and upholstery cleaning services. A true and correct copy of the January 6, 2026 letter is attached hereto as **Exhibit 14**.

60. On or about January 19, 2026, Pittiglio's counsel sent a response disputing that Pure Air offers these services and again reaffirming that Pittiglio is not competing.

61. In or around February of 2026, Chem-Dry received information that Pittiglio was considering rejoining Chem-Dry as a franchisee. Following this, Counsel for Chem-Dry contacted counsel for Pittiglio regarding Pittiglio's interest

in rejoining the Chem-Dry system. Pittiglio's counsel notified Chem-Dry's counsel that he was no longer representing her in this matter, and Chem-Dry and Pittiglio began corresponding directly in what Chem-Dry hoped would be an amicable resolution whereby Pittiglio would rejoin the System (among other terms and conditions).

62. Pittiglio sent Chem-Dry correspondence on May 18, 2026, stating that she was, in fact, **not** interested in rejoining the Chem-Dry system and that "[she has] not operated in the carpet cleaning industry in over a year and a half and do[es] not intend to return."

63. It has recently come to Chem-Dry's attention that Defendants are still operating a competitive business, Pure Carpet.

64. On information and belief, the Pure Carpet website was reactivated in early 2026 and remains operational. Indeed, Pittiglio's son, Dalton Goins, posted this on Facebook:




65. Pittiglio previously stated that Pure Carpet is operated by her son and she is not involved in that business. The Pure Carpet website claims to be a family-owned business "with over 30 years of experience".

66. On information and belief, Pittiglio's son has not been operating a carpet cleaning business for 30 years. In fact, on information and belief, he is 26 years old, as evidenced by Pittiglio's Facebook post, below, and therefore could not have been operating a carpet cleaning business for 30 years:




67. On information and belief, Pittiglio is an officer, employee, or otherwise involved with the operation of Pure Carpet.

68. Pure Carpet operates within, or within a 10-mile radius of, the Franchised Areas granted to PE LLC in the Franchise Agreements (the "Competing Business") that is a Competitive Business under the Franchise Agreements.

69. The Competing Business operates in the geographic areas encompassed by the Franchised Area(s) of at least one current Chem-Dry franchisee.

70. Despite agreeing to give Chem-Dry the Customer List upon termination or expiration of the Franchise Agreements, Defendants have failed to do so.

71. On information and belief, Defendants are using the Confidential Information, including the Customer List, and Chem-Dry's methods, techniques, formats, specifications, procedures, information, systems, sales and marketing techniques in operating Pure Carpet.

72. On information and belief, Defendants wrongfully transferred the Customer List and confidential information about those customers to which they had access as a Chem-Dry franchisee to the Competing Business. Transferring those customers away from legitimate Chem-Dry franchises means the customers are no longer guaranteed to receive the high-quality service that Chem-Dry is known to provide.

73. Customers improperly transferred to the Competing Business may never return to any future Chem-Dry franchisee. Defendants' interference with the franchise's business means that the financial well-being of the franchise as an ongoing business is at risk. Even if Defendants are eventually found liable, there is no certainty that the customers will return to the rightful business. Rather, it is just as likely that the customers move to a new contractor, free of the specter of impropriety cast by Defendants' actions.

74. Chem-Dry is suffering irreparable harm through Defendants' operation of Pure Carpet, a competing business, which is harming Chem-Dry's brand and stealing Chem-Dry's Confidential Information, its customers, and profits.

75. Chem-Dry's business is only as strong as its franchisees, and all members of the Chem-Dry franchise business understand that maintaining the confidentiality of proprietary information and complete compliance with the Franchise Agreements are critical to a healthy business.

76. Defendants are still utilizing the Chem-Dry Marks.

77. Chem-Dry had a secret shop performed of Pure Carpet around June 2026, which found that Defendants are utilizing Chem-Dry products and equipment, as captured in the below example photograph from the secret shop:




78. Defendants are using, without authorization or permission, “PURT” in a manner that is likely to cause confusion with Chem-Dry’s federally registered rights in the PURT Mark, as shown in the below Pure Carpet invoice from the secret shop:




79. Despite agreeing not to use any colorable imitation of a Mark or other indicia of a Chem-Dry business in any manner or for any purpose, (with Marks being defined to include trade dress), Defendants' advertising, promotion, and publicity utilizes the exact same color palette to the Chem-Dry Trade Dress:

| **Chem-Dry Trade Dress** | **Pure Carpet Use** |
|---|---|
|   https://www.chemdry.com/healthy-carpet-cleaning |   https://purecarpetcleaningmi.com/ |
|   |   |

80. Pure Carpet's use of a highly similar color palette as Chem-Dry's Trade Dress and Pure Carpet's ongoing use of the Chem-Dry Marks and Chem-Dry's products and equipment, represents an intentional act by Defendants to create a connection in customers' minds between Pure Carpet and Chem-Dry and to trade on Chem-Dry's goodwill.

81. Chem-Dry is suffering irreparable harm due to a likelihood of confusion between Defendants' use of a highly similar green and blue color palette and the Chem-Dry Trade Dress in the eyes of Chem-Dry's rightful customers and through the potentially irreparable loss of business opportunities.

82. Because of Chem-Dry's leading Pet Urine Removal Treatment (P.U.R.T.®)—and the inherent cuteness of dogs, Chem-Dry's marketing collateral frequently features images of dogs. In addition to copying the Chem-Dry Trade Dress, Defendants also include dog imagery in a slavish imitation of Chem-Dry marketing advertisements that have appeared, for example, on Chem-Dry van graphics and in Martha Stewart Living magazine.

83. Despite repeatedly representing that they were honoring the non-compete, Defendants have not stopped competing, are still using Chem-Dry products and equipment, and are using the Chem-Dry Marks and imitating the Chem-Dry Trade Dress.

84. Chem-Dry filed a lawsuit against Defendants in the Middle District of Tennessee, *Chem-Dry, Inc. v. Pittiglio* (M.D. Tenn. 3:26-cv-01078) (the "Tennessee Case").

85. Following Chem-Dry filing the lawsuit, counsel for Pittiglio sent a letter again claiming Pittiglio was not involved in Pure Carpet and she has no influence or control over the business.

86. Present facts contradict Pittiglio's assertions.

87. Pure Carpet's website lists its address as 24378 Crocker Boulevard, Clinton Township, MI 48036.

88. Pittiglio's company, Pure Air, also lists its address 24378 Crocker Boulevard, Clinton Township, MI 48036.

89. 24378 Crocker Boulevard, Clinton Township, MI 48036 is the same address where Pittiglio's former Chem-Dry franchise was located:




Google Maps Street View of 24378 Crocker Boulevard (November 2020)




Google Maps Street View of 24378 Crocker Boulevard (September 2025)

90. Pure Air's phone number is 586-220-5528, while Pure Carpets' phone number is 586-220-5527, a single digit difference, showing that both phone numbers are associated with a telephone carrier account under Pittiglio's control, evidencing her participation.

91. Pure Carpet claims on its website that it is one of the "2020 Three Best Rated® Carpet Cleaners in Detroit":




https://purecarpetcleaningmi.com/

92. Pure Carpet was formed in 2025.

93. Pittiglio previously posted publicly on Facebook regarding Short Stop Chem-Dry winning the "2020 Three Best Rated® Carpet Cleaners in Detroit":



Cheryl Pittiglio is feeling proud.
March 26, 2020 ·

**Top 3 carpet cleaners in Detroit, MI**

Titles are generated by AI from Meta

SHORT STOP CHEM-DRY Detroit & Surrounding Areas ,
Clinton Twp, Mich. 48036
Congratulations! You are now listed as one of the Top 3 Carpet cleaners in Detroit, MI and surrounding areas. We would like to Thank You for providing consistent high-quality service in your area of carpet cleaning business. Our review team either approved or updated your business listing using our rigorous 50-Point Inspection which includes everything from checking reputation/reviews, history, complaints, ratings, satisfaction, nearness, trust, cost and general excellence. Three Best Rated® was created with a simple goal to find you the top 3 local businesses, professionals, restaurants, health care providers, etc., in your city. We display only businesses that are verified by our team since customers deserve only the best.
That's not all... Businesses do not pay us to list them ever! You do not pay us for the listing any time. We believe that local businesses provide better and personal services locally. Local businesses know your city better since they live there too. Our policy is free to list because if you can pay to list, then is it really the best business?
It has been an honor and a pleasure to work with you. Share this exciting news!
Sincerely,
Melinda Crawford,
ThreeBestRated®



THREEBESTRATED.COM
**3 Best Carpet Cleaners in Detroit, MI - Expert Recommendations**
Expert recommended Top 3 Carpet Cleaners in Detroit, MI. How do we actually find? ThreeBestRated.com 50-Point Inspection includes everything from checking reputation, history, complaints, reviews, ratings, satisfaction, trust...

50 21 comments 8 shares

https://www.facebook.com/cpittrun/posts/short-stop-chem-dry-detroit-surrounding-areas-clinton-twp-mich-48036congratulati/10216627243653448/

94. Chem-Dry disputes Pittiglio's lack of involvement in Pure Carpet based on the identicality of operating locations, Pure Carpet operating in the same space Pittiglio and PE LLC operated a Chem-Dry franchise, the similarity of the companies' names ("Pure Air" versus "Pure Carpet Cleaning"), the similarity of

individuals involved in the business (Dalton Goins is involved in both Pure Carpet and Pure Air), the similarity of the phone numbers, and Pure Carpet associating itself with an award that was won by Pittiglio and PE LLC when they were operating a Chem-Dry franchise.

95. Counsel for Pittiglio asserted that venue in the Tennessee Case was improper. Without acquiescing in the basis thereof, Chem-Dry dismissed the Tennessee Case without prejudice on September 2, 2026, in favor of the instant litigation in the Eastern District of Michigan.

## COUNT I
## Breach of Contract (Franchise Agreements)

96. Chem-Dry realleges and incorporates all preceding paragraphs.

97. The Franchise Agreements are valid and enforceable and were freely executed and entered between Chem-Dry and PE LLC.

98. Chem-Dry has performed all its obligations under the Franchise Agreements.

99. Defendants are utilizing the Chem-Dry Marks and the Chem-Dry Trade Dress in violation of the Franchise Agreements.

100. Defendants have failed to provide the Customer List to Chem-Dry in violation of the Franchise Agreements.

101. Defendants are using Chem-Dry's products and equipment to operate Pure Carpet in violation of the Franchise Agreements.

102. Defendants are using Chem-Dry's Confidential Information, including the Customer List, in connection with Pure Carpet in violation of the Franchise Agreements.

103. Defendants are operating Pure Carpet in violation of the noncompete provisions in the Franchise Agreements.

104. Each of these breaches has damaged Chem-Dry.

105. As a result of Defendants' actions and inactions, Chem-Dry has suffered and is continuing to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount to be determined at trial.

## COUNT II
## Trademark Infringement (15 U.S.C. § 1114)

106. Chem-Dry realleges and incorporates all preceding paragraphs.

107. Chem-Dry owns the Chem-Dry Marks.

108. Chem-Dry has current and valid federal registrations for the Chem-Dry Marks.

109. Chem-Dry has priority and superior rights in the Chem-Dry Marks vis-à-vis Defendants.

110. Chem-Dry is the earlier user in commerce of the Chem-Dry Marks vis-à-vis Defendants.

111. Since at least the first use in commerce dates listed on the respective registration certificates, Chem-Dry has continuously used the Chem-Dry Marks in

commerce.

112. The Chem-Dry Marks are legally protectable.

113. Defendants have used the Chem-Dry Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of their goods and services.

114. Defendants use the Chem-Dry Marks in geographical territories in which Chem-Dry and its franchisees use the Chem-Dry Marks.

115. Following the expiration or termination of the Franchise Agreements, Chem-Dry has not authorized or consented to Defendants' use of the Chem-Dry Marks.

116. Defendants' use of the Chem-Dry Marks is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of the parties' goods and services.

117. Defendants' use of the Chem-Dry Marks constitutes trademark infringement in violation of 15 U.S.C. § 1114.

118. Defendants are willfully infringing the Chem-Dry Marks despite having actual knowledge of Chem-Dry's rights in the Chem-Dry Marks and actual knowledge that such use is likely to cause confusion, mistake, or deception.

119. Defendants' infringement is causing Chem-Dry to suffer irreparable harm for which Chem-Dry has no adequate remedy at law.

120. Defendants' infringement will continue and escalate unless enjoined by this Court.

121. Defendants' infringement has proximately caused Chem-Dry to suffer damages.

122. Chem-Dry is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, a reasonable royalty, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117 and all other applicable law.

**COUNT III**
**Unfair Competition (15 U.S.C. § 1125(a))**

123. Chem-Dry realleges and incorporates all preceding paragraphs.

124. Chem-Dry owns the Chem-Dry Marks.

125. The Chem-Dry Marks are legally protectable.

126. Chem-Dry has priority and superior rights in the Chem-Dry Marks vis-à-vis Defendants.

127. Chem-Dry is the earlier user in commerce of the Chem-Dry Marks vis-à-vis Defendants.

128. Chem-Dry has used the Chem-Dry Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of its services since at least as early as the dates listed in the respective registrations for the Chem-Dry Marks.

129. Following the expiration or termination of the Franchise Agreements, Chem-Dry has not authorized or consented to Defendants' use of the Chem-Dry Marks.

130. Defendants' use of the Chem-Dry Marks is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of the parties' goods and services.

131. Defendants' use of the Chem-Dry Marks constitutes unfair competition in violation of 15 U.S.C. § 1125.

132. Defendants' conduct is willful because they are using the Chem-Dry Marks despite having actual knowledge of Chem-Dry's superior rights in the Chem-Dry Marks and actual knowledge that such use is likely to cause confusion, mistake, or deception.

133. Defendants' conduct is causing Chem-Dry to suffer irreparable harm for which Chem-Dry has no adequate remedy at law.

134. Defendants' conduct will continue and escalate unless enjoined by this Court.

135. Defendants' conduct has proximately caused Chem-Dry to suffer damages.

136. Chem-Dry is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, a reasonable royalty, costs,

and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125 and all other applicable law.

## COUNT IV
## Tennessee Common Law Trademark Infringement

137. Chem-Dry realleges and incorporates all preceding paragraphs.

138. Chem-Dry owns valid and legally protectable common law rights in the Chem-Dry Marks.

139. The Chem-Dry Marks are legally protectable.

140. Chem-Dry has priority and superior rights in the Chem-Dry Marks vis-à-vis Defendants.

141. Chem-Dry is the earlier user in commerce of the Chem-Dry Marks vis-à-vis Defendants.

142. Defendants have used the Chem-Dry Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of their goods and services.

143. Defendants use the Chem-Dry Marks in geographical territories in which Chem-Dry and its franchisees use the Chem-Dry Marks.

144. Following the expiration or termination of the Franchise Agreements, Chem-Dry did not authorize or consent to Defendants' use of the Chem-Dry Marks.

145. Defendants' use of the Chem-Dry Marks is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of the

parties' goods and services.

146. Defendants' use of the Chem-Dry Marks constitutes common law trademark infringement.

147. Defendants' infringement is causing Chem-Dry to suffer irreparable harm for which Chem-Dry has no adequate remedy at law.

148. Defendants' infringement will continue and escalate unless enjoined by this Court.

149. Defendants' infringement has proximately caused Chem-Dry to suffer damages.

150. Chem-Dry is entitled to injunctive relief and to recover Defendants' profits, actual damages, a reasonable royalty, costs, and reasonable attorneys' fees under all applicable law.

151. Upon information and belief, Defendants acted maliciously, intentionally, fraudulently, and/or recklessly. Chem-Dry is therefore entitled to punitive damages.

**COUNT V**
**Tennessee Common Law Unfair Competition**

152. Chem-Dry realleges and incorporates all preceding paragraphs.

153. Chem-Dry owns valid and legally protectable common law rights in the Chem-Dry Marks.

154. Defendants have used the Chem-Dry Marks in commerce in connection

with the sale, offering for sale, distribution, and advertising of their goods and services.

155. Chem-Dry did not authorize or consent to Defendants' use of the Chem-Dry Marks.

156. Defendants' use of the Chem-Dry Marks is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of the parties' goods and services.

157. Defendants' use of the Chem-Dry Marks constitutes common law unfair competition.

158. Defendants' conduct is causing Chem-Dry to suffer irreparable harm for which Chem-Dry has no adequate remedy at law.

159. Defendants' conduct will continue and escalate unless enjoined by this Court.

160. Defendants' conduct has proximately caused Chem-Dry to suffer damages.

161. Chem-Dry is entitled to injunctive relief and to recover Defendants' profits, actual damages, a reasonable royalty, costs, and reasonable attorneys' fees under all applicable laws.

162. Upon information and belief, Defendants acted maliciously, intentionally, fraudulently, and/or recklessly. Chem-Dry is therefore entitled to

punitive damages.

## COUNT VI
## Trade Dress Infringement

163. Chem-Dry realleges and incorporates all preceding paragraphs.

164. Through extensive and consistent advertising, promotion, and publicity, Chem-Dry has obtained and holds the unique and distinctive Chem-Dry Trade Dress.

165. The Chem-Dry Trade Dress is inherently distinctive, or at a minimum, has acquired distinctiveness through secondary meaning as Chem-Dry has consistently used the distinctive Chem-Dry Trade Dress for more than five years to identify its cleaning services.

166. The Chem-Dry Trade Dress does not serve a functional purpose: It is an ornamental color scheme and has no function.

167. As a result of the extensive sales, advertising and promotion of items identified by the Chem-Dry Trade Dress, the public has come to know and recognize the Chem-Dry Trade Dress, and to associate it exclusively with products and services offered by Chem-Dry and Chem-Dry franchisees. The Chem-Dry Trade Dress is widely known and is an asset of inestimable value to Chem-Dry, representing and embodying Chem-Dry's considerable goodwill and favorable reputation.

168. Defendants' Competing Business utilizes a color scheme that is highly similar to Chem-Dry's trade dress outside of the scope of the Franchise Agreements, creating a false designation of the origin of Defendants' business, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their business with the licensed businesses operated by Chem-Dry's other franchisees.

169. Such adoption of Chem-Dry's Trade Dress violates Section 43 of the Lanham Act (15 U.S.C. § 1125) and the common law.

170. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

171. As a result of the actions of Defendants, Chem-Dry has suffered and is continuing to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT VII
## Unjust Enrichment

172. Chem-Dry incorporates and realleges all preceding paragraphs.

173. Defendants have been unjustly enriched by Defendants' actions, including but not limited to taking wrongful advantage of the industry knowledge, trade secrets and training Chem-Dry provided.

174. Chem-Dry is entitled to damages in an amount to be determined at trial for such unjust enrichment.

**COUNT VIII**
**False Advertising**

175. Chem-Dry incorporates and realleges all preceding paragraphs.

176. Pure Carpet's statement that it has "over 30 years of experience" is a false statement concerning Pure Carpet's services. Specifically, Pure Carpet does not have over 30 years of experience. It was formed on January 14, 2025.

177. Pure Carpet uses the following seal on its website that it's a "2020 Three Best Rated® Top 3 Carpet Cleaners in Detroit", which is a false statement concerning Pure Carpet's services. Specifically, Pure Carpet did not win Top 3 Carpet Cleaners in Detroit, as, for example, it was formed on January 14, 2025.

178. Pure Carpet's statements actually or tend to deceive a substantial portion of Pure Carpet's intended audience.

179. Pure Carpet's statements are material and will likely influence customers' purchasing decisions.

180. Pure Carpet's statements were introduced into interstate commerce.

181. Chem-Dry and its franchisees have been and/or will be harmed by Pure Carpet's statements.

182. Chem-Dry is entitled to injunctive relief and to recover Pure Carpet's profits, actual damages, enhanced profits and damages, a reasonable royalty, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125 and all other applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Chem-Dry requests that this Court:

1. Enter a judgment restraining and enjoining Defendants and Defendants' agents, servants, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly violating the confidentiality and non-competition provisions in the Franchise Agreements in any manner, and further enjoin the operation of the Competing Business or any other competing businesses for a period of two (2) years from the date of the judgment;

2. Enjoin Defendants, and Defendants' agents, servants, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly disclosing, using or otherwise employing for any reason Chem-Dry's confidential and proprietary business information, and from otherwise engaging in unfair competition with Chem-Dry;

3. Enjoin Defendants, and Defendants' agents, servants, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly infringing upon Chem-Dry's Trade Dress and the Chem-Dry Marks;

4. Enjoin Pure Carpet and Pure Carpet's agents, servants, employees, attorneys, and all others in active concert or participation with them, from falsely advertising;

5. Enter a judgment in favor of Chem-Dry for the damages incurred as a result of Defendants' breaches of the Franchise Agreements and other wrongful actions;

6. Find Defendants liable for trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and trademark infringement and unfair competition under Tennessee common law;

7. Find Defendants' violations of the Lanham Act were willful;

8. Find that this is an exceptional case pursuant to 15 U.S.C. § 1117;

9. Order an accounting of all the profits realized by Defendants from their infringement of the Chem-Dry Marks;

10. Award monetary relief to Chem-Dry in the form of an accounting and payment by Defendants of their profits they made from their unlawful activities, pursuant to 15 U.S.C. §§ 1114, 1117(a), and other applicable law;

11. Award monetary relief to Chem-Dry in the form of an award of actual, compensatory, statutory, increased, exemplary, and punitive damages in an amount to be proven at trial;

12. Award monetary relief to Chem-Dry in the form of a reasonable royalty for Defendants' use of the Chem-Dry Marks, pursuant to 15 U.S.C. § 1117(a) and other applicable law;

13. Award Chem-Dry treble damages pursuant to 15 U.S.C. § 1117 and

other applicable law;

14. Award Chem-Dry prejudgment interest in accordance with the Lanham Act and applicable law;

15. Award Chem-Dry its costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreements and the Lanham Act; and

16. Award Chem-Dry such other relief as this Court may deem just and proper.

This 10th day of September 2026.

Respectfully Submitted,

**HUSCH BLACKWELL LLP**

By: *_/s/ Ann M. Maher_*
Ann M. Maher
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Direct: 414.978.5410
Fax: 414.223.5000
ann.maher@huschbalckwell.com

***Attorneys for Plaintiff Chem-Dry, Inc.***